UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ENVIRONMENT RHODE ISLAND,
BURTON HOFFMAN, HENRY ROSEMONT, JR.,
DAVID WIXTED, and HENRY T. WROBEL,

Plaintiffs,

v. C.A. No. 08-323S

TOWN of MIDDLETOWN,

Defendant

**CONSENT DECREE**

Upon consideration of the Motion for Entry of Consent Decree and Order filed by the parties, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

**BACKGROUND**

1. Plaintiffs Environment Rhode Island, Burton Hoffman, Henry Rosemont, David Wixted, and Henry T. Wrobel brought this suit against the Town of Middletown ("the Town") under the federal Clean Water Act ("CWA" or "the Act"), 33 U.S.C. § 1252, et. seq., for alleged violations of the Act relating to sanitary sewer overflows and stormwater discharges.

2. The parties recognize, and the Court by entering this Consent Decree and Order (the "Decree") finds, that this decree has been negotiated by the parties in good faith, that settlement of this matter is in the public interest and in accordance with the CWA, and that entry of this Decree is fair and reasonable.

3. On the date the parties filed this Decree with this Court, Plaintiffs concurrently served a copy of this Decree on the United States Environmental Protection Agency and the United States Department of Justice, consistent with the requirements of 33 U.S.C. § 1365(c)(3).

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the parties and subject matter of this Decree pursuant to 28 U.S.C. § 1331 and 33 U.S.C. § 1365(a).

## APPLICABILITY

5. The provisions of this Decree shall apply to and be binding upon the parties and their successors and assigns.

6. Definitions. For purposes of this Decree, the following terms shall have the following meanings:

"Month" means a calendar month.

"Determination of Feasibility" shall mean a determination based on technical and economic factors that a Recommended Alternative identified pursuant to the Compliance Section, below, is capable of being successfully implemented to adequately address either sanitary sewer overflows or stormwater discharges.

## COMPLIANCE

### Sanitary Sewer Overflows

7. For the purposes of this Decree, a sanitary sewer overflow ("SSO") is any discharge of sewage (or of sewage combined with stormwater, groundwater, or snow melt) from the Town's sewer system prior to the point at which the Town's sewage has left the Town's control and entered the wastewater system of the City of Newport.

8. Within one month of the entry of the Consent Decree, the Town shall initiate the tasks necessary to evaluate potential alternatives to address SSOs (the "SSO Alternatives Evaluation Work"). These alternatives are: (1) increasing storage capacity; (2) rerouting wastewater flow; and (3) implementing measures to reduce inflow and infiltration into the Town's sewer system, and are described in the Scope of Work, attached as Exhibit A. Exhibit A includes the schedule by when the Town shall complete the SSO Alternatives Evaluation Work.

9. Within three months of completing the SSO Alternatives Evaluation Work, the Town shall prepare a Draft SSO Alternatives Report, and submit the draft report to the Rhode Island Department of Environmental Management ("RIDEM") for review and comment, with a copy sent to Plaintiffs. The Draft SSO Alternatives Report shall include an evaluation of the data and analyses resulting from the SSO Alternatives Evaluation Work and, except as set forth in Paragraph 14, below, a Determination of the Feasibility of implementing one or a combination of the SSO Alternatives. This Draft Report need not include a determination of the feasibility of all of the SSO Alternatives if it determines that at least one of these alternatives is feasible.

10. Within one month of receipt of RIDEM's comments, the Town shall address RIDEM's comments and issue the Final SSO Alternatives Report. The Town shall send a copy of the Final SSO Alternatives Report to Plaintiffs. The Town will make all reasonable efforts to obtain RIDEM's comments within a reasonable time.

11. Within three months of the issuance of the Final SSO Alternatives Report, the Town shall issue the SSO Implementation Schedule, which shall set forth the tasks necessary to implement one or a combination of the SSO Alternatives (the

"Recommended SSO Alternative"). The Town shall send a copy of the SSO Implementation Schedule to Plaintiffs.

12. The SSO Implementation Schedule shall include schedules necessary to implement the Recommended SSO Alternative including (1) a schedule for the preliminary design (2) a schedule for preparing and submitting any required applications for permits and approvals to federal, state, or local agencies, and (3) a proposed design, bid, and construction schedule. These schedules shall be based on realistic timelines for completing each implementation stage. After submitting any application identified in a schedule developed under subparagraph (2) to the applicable agency, the Town shall use reasonable efforts to obtain such permit or approval from the applicable agency.

13. The Town shall complete the Recommended SSO Alternative in accordance with the SSO Implementation Schedule, and shall so certify to the Plaintiffs upon completion.

14. If the Draft SSO Alternatives Report in Paragraph 9, above, determines that none of the SSO Alternatives is feasible, within three months of issuance of the Draft SSO Alternatives Report, the Town shall issue a report that identifies other potential SSO Alternatives to evaluate. Within three months of issuance of this report, the Town shall initiate the tasks identified to evaluate the new alternatives, and proceed to comply with the schedule and requirements set forth in Paragraph 8 through 13, above.

15. If there is an SSO event after the date the Recommended SSO Alternative is completed, the Town shall within three months issue a report that identifies other potential SSO Alternatives to evaluate. Within three months of issuance of this report, the Town shall initiate the tasks identified to evaluate the new alternatives, and proceed

to comply with the schedule and requirements set forth in Paragraph 8 through 13, above. For purposes of this paragraph, an SSO event shall not include any sanitary sewer overflow discharges that occur as a result of a 5-year return frequency storm event (see Table 3-1, 2009 Draft Rhode Island Stormwater Design & Installation Standards Manual).

**Stormwater**

16. For purposes of this Decree, "stormwater" shall have the meaning given to the term "storm water" under the Rhode Island General Permit for Storm Water Discharge from Small Municipal Separate Storm Sewer Systems, RIPDES No. RIR040000, or any subsequent RIPDES permit regulating the Town's discharge of storm water.

17. Within one month of the entry of the Consent Decree, the Town shall initiate the tasks necessary to evaluate potential alternatives to address the Town's stormwater discharges (the "Stormwater Alternatives Evaluation Work"). These alternatives are (1) construction of a gravel wetland to manage stormwater for the Newport Avenue catchment area; and (2) redirection of Esplanade Outfall 1 to Esplanade Outfall 2 and extension to deeper water with a diffuser, and are described in the Scope of Work, attached as Exhibit B. Exhibit B includes a schedule by when the Town shall complete the Stormwater Alternatives Evaluation Work.

18. Within three months of completing the Stormwater Alternatives Evaluation Work, the Town shall prepare a Draft Stormwater Alternatives Report, and submit the draft report to RIDEM for review and comment, with a copy sent to Plaintiffs. The Draft Stormwater Alternatives Report shall include an evaluation of the data and analyses

resulting from the Stormwater Alternatives Evaluation Work and, except as set forth in Paragraph 23, below, a Determination of the Feasibility of implementing one or a combination of the Stormwater Alternatives. This Draft Report need not include a determination of the feasibility of the gravel wetland alternative if it determines that the Esplanade outfall alternative is feasible.

19. Within one month of receipt of RIDEM's comments, the Town shall address RIDEM's comments and issue the Final Stormwater Alternatives Report. The Town shall send a copy of the Final Stormwater Alternatives Report to Plaintiffs. The Town will make all reasonable efforts to obtain RIDEM's comments within a reasonable time.

20. Within three months of the issuance of the Final Stormwater Alternatives Report, the Town shall prepare the Stormwater Implementation Schedule, which shall set forth the tasks necessary to implement one or a combination of the Stormwater Alternatives (the "Recommended Stormwater Alternative").

21. The Stormwater Implementation Schedule shall include, at a minimum, schedules necessary for implementing the Recommended Stormwater Alternative including (1) a schedule for the preliminary design (2) a schedule for preparing and submitting any required applications for permits and approvals to federal, state, or local agencies, and (3) a proposed design, bid, and construction schedule. These schedules shall be based on realistic timelines for completing each implementation stage. After submitting any application identified in a schedule developed under subparagraph (2) to the applicable agency, the Town shall use reasonable efforts to obtain such permit or approval from the applicable agency. If the Recommended Stormwater Alternative includes the construction of the gravel wetland, such wetland shall be designed,

constructed, operated, and maintained in accordance with performance standard criteria set forth in the "Rhode Island Stormwater Design and Installation Standards Manual (the "Manual) (Draft – May 2009) (p. 3-2, 3-3 and 5-2), or in accordance with appropriate performance standard criteria approved by the applicable permitting agencies.

22. The Town shall complete the Recommended Stormwater Alternative in accordance with the Stormwater Implementation Schedule, and shall so certify to the Plaintiffs upon completion.

23. If the Draft Stormwater Alternatives Report in Paragraph 18, above, determines that neither of the alternatives is feasible, within three months of issuance of the Draft Stormwater Alternatives Report, the Town shall, subject to the provisions of Paragraph 24, below, issue a report that identifies other potential stormwater alternatives to evaluate. Within three months of issuance of this report, the Town shall initiate the tasks identified to evaluate the new alternatives, and proceed to comply with the schedule and requirements set forth in Paragraph 17 through 22, above.

24. The Esplanade outfall alternative will be designed to meet water quality standards. Should the Town not implement that alternative, the Town shall propose and implement (in accordance with Paragraph 23, above) another project (or combination of projects) that will provide comparable assurance that the stormwater from the Esplanade outfalls will not contribute to water quality violations. Should Plaintiffs not agree that the selected alternative meets this criterion, they may, in a timely fashion, apply to the Court for appropriate relief. The parties agree that Plaintiffs reserve the right to bring an action after the termination of the stormwater portion of this Consent Decree to enforce

CWA permits covering the Town's stormwater discharge should they believe that such discharge is contributing to water quality violations in Easton's Bay.

**Stipulated Penalties**

25. The Town shall be subject to stipulated penalties of $250 for each day the Town fails to timely meet any of the milestones or requirements set forth in Paragraphs 7 through 24, or in any schedule developed in accordance with those Paragraphs, except that the stipulated penalties for any failure to meet a particular milestone or requirement shall increase to $500 per day after fourteen days, to $750 per day after twenty-one days, and to $1,000 per day after thirty days. Stipulated penalties shall automatically begin to accrue on the first day the Town fails to timely meet any of the milestones or requirements set forth in Paragraphs 7 though 24. Stipulated penalties shall be paid to the RIDEM Water and Air Protection Account. Plaintiffs may, in the exercise of their unreviewable discretion, waive their right to any or all of a portion of the stipulated penalty amount.

**Force Majeure**

26. The Town shall take all necessary measures to avoid delays in timely meeting the milestones and requirements in this Consent Decree. "Force majeure" for the purposes of this Decree is defined as an event arising from causes beyond the control of the Town or the control of any entity controlled by the Town, including it consultants and contractor, which could not have been foreseen and prevented by the exercise of reasonable diligence, which delays or prevents the performance of any obligations under this Decree.

27. If any event occurs that causes or may cause the Town to be subject to stipulated penalties under Paragraph 25, the Town shall notify Plaintiffs in writing within fourteen (14) days from the date the Town first knew, or in the exercise of reasonable diligence should have known, that such event occurred. The notice shall reference this paragraph of the Consent Decree and shall describe in detail the anticipated length of time the event may persist, the precise cause or causes of the event, the measures taken or to be taken by the Town to prevent or minimize the event, and the timetable by which those measures will be implemented. The Town shall adopt all reasonable measures to avoid or minimize any such event that would cause it to be subject to stipulated penalties. Failure by the Town to comply with the notice requirements of this Paragraph shall constitute a waiver of the Town's rights to obtain an extension of time or other relief under this Paragraph based on such incident.

28. If Plaintiffs agree that the delay has been or will be caused by circumstances that are beyond the Town's control and that the Town could not have foreseen and prevented such delay by the exercise of reasonable diligence, the parties shall stipulate to an extension of the timeframe(s) affected by that delay. The Town shall not be liable for stipulated penalties for such period of delay. If Plaintiffs do not agree with the Town's claim of Force Majeure, either party may submit the matter to the Court for resolution.

**TERMINATION OF DECREE**

29. The provisions of this Consent Decree addressing SSOs, in paragraphs 7 through 15, shall terminate either:

(1) on the date that there have been no SSOs for 24 consecutive months, starting from the date the Recommended SSO Alternative is completed; OR

(2) on the date that there have been three consecutive years without an SSO event; the parties agree that the last SSO event (as of the date on which the parties execute this Consent Decree) occurred on April 6, 2009,

whichever comes first, and the Town has certified to Plaintiffs in writing this condition has been satisfied. For purposes of this paragraph, an SSO event shall not include any sanitary sewer overflow discharges that occur as a result of a 5-year return frequency storm event (see Table 3-1, 2009 Draft Rhode Island Stormwater Design & Installation Standards Manual).

30. The provisions of this Consent Decree addressing stormwater discharges, in paragraphs 16 - 24, shall terminate upon the date the Recommended Stormwater Alternative is completed pursuant to Paragraph 22, above, and the Town has certified to Plaintiffs in writing that this condition has been satisfied. .

## ENFORCEMENT

31. The Court shall retain jurisdiction of this case under 33 U.S.C. § 1365 until the termination of the Decree in order to enforce the terms and conditions of the Decree, to modify the Decree, and to resolve any disputes arising hereunder.

## COSTS OF LITIGATION

32. Pursuant to 33 U.S.C. § 1365(d), Middletown shall pay $25,000 for Plaintiffs' costs of litigation (including reasonable attorney and expert witness fees) within 30 days of the date of entry of this Decree.

## GENERAL PROVISIONS

33. This Decree constitutes a settlement by Plaintiffs of all claims pursuant to the CWA for the violations alleged in the Complaint.

34. All correspondence concerning this Decree and all documents that are submitted pursuant to this Decree shall be addressed as follows:

As to Plaintiffs:

Charles C. Caldart
National Environmental Law Center
44 Winter Street, 4th Floor
Boston, Massachusetts 02108

As to the Town of Middletown:

Gerald J. Petros
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903

35. There shall be no modification of this Decree without agreement among all parties to the Decree and written approval by the Court, or by Order of the Court.

36. The effective date of this Decree shall be the date of its entry.

## CONSENT TO ENTRY OF DECREE

37. Each of the parties consents to entry of this Decree, subject to the Court's approval of this Decree. The undersigned representatives of each party certify that they are fully authorized by the party to enter into the terms and conditions of this Decree and to execute and legally bind the represented parties to it.

Judgment is hereby entered in accordance with this Consent Decree and Order this

24 day of March, 2010.

William E. Smith
United States District Judge

AGREED AND CONSENTED TO THIS ___ DAY OF _____, 2010

FOR ENVIRONMENT RHODE ISLAND:

_______________________________

FOR TOWN OF MIDDLETOWN:

Shawn J. Brown

**AGREED AND CONSENTED TO BY:**

**ENVIRONMENT RHODE ISLAND**

**Name:** JOHN RUMPLER
**Title:** SENIOR ATTORNEY
**Date:** 12/31/09

Burton Hoffman / by DW
**BURTON HOFFMAN**
**Date:** 12/31/09

Henry Rosemont, Jr / by DW
**HENRY ROSEMONT, JR**
**Date:** 12/31/09

David Wixted
**DAVID WIXTED**
**Date:** 12/31/09

Henry T. Wrobel
**HENRY T. WROBEL**
**Date:** 12/31/09

/s/ Karen A. Pelczarski
**Karen A. Pelczarski (RI Bar No. 3357)**

**Date:** 1/27/10

**Blish & Cavanagh**
**30 Exchange Terrace**
**Providence, RI 02903**
**Tel. (401) 831-8900**
**Fax (401) 751-7542**
**kap@blishcavlaw.com**

# EXHIBIT A

# SSO ALTERNATIVES EVALUATION WORK

# SCOPE OF WORK

1. **Evaluate increasing storage capacity**

   a. Wastewater Storage Analysis: Review and evaluate the initial storage analysis presented in the *Preliminary Wet-Weather Storage Feasibility Study* dated August 2007 by The Louis Berger Group, Inc (Berger), including Berger's approach and recommendation, and evaluate the cost effectiveness of storage in relation to infiltration and inflow removal.

   b. Update capacity analysis: Compare potential capacity to existing flows at sites previously monitored. The capacity analysis will be limited to main trunk lines in proximity to monitoring locations and the three pump stations.

      The capacity analysis will help to determine areas with potential storage, such as an in line flow "hold back," and will help to identify pipe segments and pump stations that may restrict flow or that can accept additional flow. This information will be used to develop a capacity management plan that will also assist in evaluating rerouting options, below.

   c. Identify opportunities and constraints to determine feasibility for distributed upstream storage, predictive and proactive operations to minimize surcharging, and storage options that may require pumping back into the gravity system.

2. **Evaluate rerouting flow**

   a. Evaluate diversion to the Coddington Highway pump station. Based on flow monitoring and pump station flow, evaluate the feasibility to divert wastewater to the Coddington Highway pump station or nearby location for discharge to the Newport system.

   b. The potential for transferring flow to a regional wastewater treatment facility with an East Passage discharge is being studied by others through a Regional Facilities Plan sponsored by the Aquidneck Island Chamber of Commerce. Depending on the timing and the type of information developed in this study, this possibility for rerouting may also be included in this evaluation.

**3. Evaluate implementing measures to reduce I/I**

a. Evaluate I/I program effectiveness by assessing the Phase 1 and Phase 2 SSES reports and associated data produced by Berger. Determine change or trend in flows due to rehabilitation work recommended by the reports.

b. Flow Monitoring: If the storage capacity analysis and rerouting evaluations do not provide sufficient information, flow meters, a rain gauge and groundwater gauges will be installed in spring 2010 (likely March through April) in locations used during the 2003 Berger monitoring program.

c. A wastewater system dynamic computer model will be needed if storage and capacity analysis alternatives are found to be insufficient and instead complex management functions such as algorithms using multiple dynamic data inputs are needed. The modeling effort will be re-evaluated in spring 2010 once the more conventional program effectiveness evaluation is underway and nearing completion.

# SCHEDULE

| [illegible] | [illegible] | Months from Consent Decree Entry |
|---|---|---|
| | | |
| | Project Initiation | 1 |
| 1 | Evaluate Increasing Storage Capacity | |
| 1a | Storage Analysis | 3 |
| 1b | Update Capacity Analysis | 3 |
| 1c | Identify Storage Opportunities and Constraints | 3 |
| | | |
| 2 | Evaluate Rerouting Flow | |
| 2a | Evaluate Diversion to the Coddington Highway Pump Station | 4 |
| 2b | Coordination with Regional Plan (if possible) | 18 |
| | | |
| 3 | Evaluate Implementing Measures to Reduce I/I | |
| 3a | Evaluate I/I Program Effectiveness | 5 |
| 3b | Flow Monitoring | 12 |
| 3c | Wastewater System Dynamic Model Development | 15 |

# EXHIBIT B
# STORMWATER ALTERNATIVES EVALUATION WORK
# SCOPE OF WORK

This scope of work addresses tasks necessary to evaluate both of the stormwater alternatives: (1) construction of a gravel wetland to manage stormwater for the Newport avenue catchment area and (2) redirection of Esplanade Outfall 1 to Esplanade Outfall 2 with diffuser system.

1. **Flow Monitoring (Moat, Newport Ave., Esplanade 1 and Esplanade 2):**

   a. Conduct flow monitoring to obtain information to augment flow data collected in 2007 by the Woods Hole Group, to calibrate watershed models, and develop realistic design criteria for diffuser and other stormwater structural systems.

2. **Model to further evaluate and optimize alternatives:**

   a. Bacteria Sampling Summary and Analysis: Compile bacteria sampling data from RI Department of Health, Clean Ocean Access, Town consultants and others from appropriate sampling locations and develop tables representing sampling results for these locations. Link the sampling data to precipitation event data available from local sources. Analyze the data to determine the most probable bacteria concentrations to be used in the evaluation of the diffuser system at Esplanade 2.

   b. Develop Watershed Hydrologic/Hydraulic Model: This model will be calibrated with flow measurements and will provide the basis for sizing of potential structural solutions. This task will focus on achieving the following objectives:

      i. Development of A Drainage Area Model: This subtask will develop a hydrologic/hydraulic model of the Newport Ave, Esplanade 1 and Esplanade 2 watersheds.

      ii. Calibrate the model based on measured flow rates: The model will be developed for existing conditions and calibrated based on flow measurements.

   c. Optimize Model: Refine the model originally conducted in March 2008 to incorporate flow rates based on selected design storm and bacteria concentration values as determined in previous tasks.

   d. Constraints Analysis: Complete a constraints analysis for the project sites to show criteria that must be considered to determine feasibility. The objective of this task is to understand the factors that will influence implementation options and regulatory permitting for the Gravel Wetland, Esplanade 1

Redirection and Diversion, and Esplanade 2 Outfall Diffuser implementation. These criteria are:

- Environmental limitations and constraints that may apply to project development, including elevation restrictions.
- Regulatory and permitting requirements associated with project development within the CRMC and RIDEM jurisdiction.
- Easement acquisition needs on RIDOT, Newport Water District and private Esplanade properties.
- Limitations associated with the existing utilities and utility easements.
- Floodplain limits identified on the Flood Insurance Rate Maps and the limitations associated with the flood zones present on the sites.

## SCHEDULE

| Task No. | Tasks | Months from Consent Decree Entry |
|---|---|---|
| | | |
| | Project Initiation | 1 |
| 1 | Flow Monitoring Program | |
| 1a | Flow Monitoring Stormwater Outfalls and Moat | 6 |
| | | |
| 2 | Model to Further Evaluate and Optimize Alternatives | |
| 2a | Bacteria Sampling Summary and Analysis | 3 |
| 2b | Develop Watershed Hydrologic/Hydraulic Model | 8 |
| 2c | Optimize Model | 12 |
| 2d | Constraints Analysis | 15 |